UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLSTATE INSURANCE CO., <br>     Plaintiff, <br><br> v. <br><br> SUDHA SWAMINATHAN, KANISHKA TANKALA, AND KRISTEN COLE, <br>     Defendants. | No. 3:16-cv-1708 (VAB) |

**<u>RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Allstate Insurance Company ("Allstate" or "Plaintiff") seeks a declaratory judgment that it has no obligation to defend or indemnify Sudha Swaminathan and Kanishka Tankala in an underlying state court lawsuit. Compl., ECF No. 1. Following the close of discovery, Allstate now moves for summary judgment. Mot. Summ. J., ECF No. 24.

For the reasons discussed below, Allstate has no duty to defend or to indemnify Swaminathan and Tankala in the underlying state court lawsuit based on either the homeowner's insurance policy or the personal umbrella policy, and Allstate's motion for summary judgment is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.    Factual Allegations**

From June 27, 2000 until December 16, 2013, Sudha Swaminathan and Kanishka Tankala owned a house at 30 Andreis Trail, South Windsor, Connecticut. Swamanathan Answer ¶ 9, ECF No. 21. During that same time period, they maintained a homeowner's insurance policy from Allstate covering the property. Compl. Ex. B, ECF No. 1-2 ("Homeowner's Insurance Policy"); Pl.'s Statement of Material Facts ("SMF") ¶ 1, ECF No. 25. They also maintained a

personal umbrella insurance policy from February 16, 2013 to February 16, 2014. SMF ¶ 6; Compl. Ex. C, ECF No. 1-3 ("Personal Umbrella Policy").

Their homeowner's policy provided:

> Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
>
> We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

Homeowner's Insurance Policy at 42. The policy did not cover:

> [B]odily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:
>
> a) such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or
>
> b) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not the insured person is actually charged with, or convicted of, a crime.

*Id.* Also, the policy did not "cover property damage to property rented to, occupied or used by, or in the care of, an insured person" or "any liability an insured person assumes arising out of any contract or agreement." *Id.* at 43-44.

The personal umbrella policy stated that "Allstate will pay when an insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence." Personal Umbrella Policy at 20. The policy defines the following terms:

2

> 7. "Occurrence" means an accident or a continuous exposure to conditions. An occurrence includes personal injury and property damage caused by an insured while trying to protect persons or property from personal injury or property damage.
>
> 8. "Personal Injury"—means:
>
>     a) bodily injury;
>
>     b) false arrest; false imprisonment; wrongful detention;
>
>     c) wrongful entry; invasion of rights of occupancy; or malicious prosecution;
>
>     d) libel; slander; misrepresentation; humiliation; defamation of character; invasion of rights of privacy; and
>
>     e) discrimination and violation of civil rights, where recovery is permitted by law. Fines and penalties imposed by law are not included.
>
> 9. "Property Damage" means physical injury to tangible property. It includes resulting loss of use. This also means loss of use of tangible property not physically injured I the loss of use is caused by an occurrence during the policy period.

*Id.* at 19. The policy specifies that it covers "an occurrence arising only out of . . . personal activities of an insured, including the lending by an insured of a land vehicle or watercraft owned by an insured" but not "to personal injury to an insured," or to "property damage to any . . . property owned by any insured." *Id.* at 21-22. The policy does not cover bodily injury or property damage "intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any insured." *Id.* at 23.

On December 16, 2013, Swaminathan and Tankala sold the house to Kristen Cole. SMF ¶ 11. In February 2016, Cole discovered that concrete in the home had been deteriorating for years and would need to be replaced. Compl. Ex. A ¶¶ 15-16.

On August 24, 2016, Cole sued Swaminathan and Tankala and other defendants in Connecticut Superior Court, alleging, as relevant here, breach of contract, breach of the implied

3

covenant of good faith and fair dealing, fraudulent misrepresentation, and negligent misrepresentation. Compl. Ex. A. Cole alleged that Swaminathan and Tankala knew or should have known about the condition of the concrete and that the concrete in houses in the area had been deteriorating; used a sealer to conceal the problem; and failed to disclose it. *Id.* ¶ 17 ("Upon information and belief, the aforementioned concrete condition was common knowledge to the residents of Andreis Trail, South Windsor, CT, including the Defendants"); ¶ 21 ("Upon information and belief, the Defendants . . . utilized a sealer to disguise the aforementioned condition of the concrete in order to conceal a material issue with the property"); ¶ 12 ("The Plaintiff relied on a portion of the aforementioned agreement entitled 'Residential Property Condition Disclosure Report' where, in response to question number 16, the Defendants, Kanishka Tankala and Sudha Swaminathan, indicated that there were no issues with the foundation for the property known as 30 Andreis Trail, South Windsor, CT 06074 and further stated 'some cracks sealed and water proofing done preventative measure – no water issues.'").

Cole thus alleged that Tankala and Swaminathan had breached their contract because they knew or should have known of the deteriorating concrete and failed to disclose it. *Id.* ¶¶ 22-24. Cole also alleged that Tankala and Swaminathan acted maliciously and in bad faith by attempting to conceal the property's condition. *Id.* at 7. Further, she alleged that the "Residential Property Condition Disclosure Report" contained either intentional or negligent misrepresentations about the concrete's condition. *Id.* at 8-9. Cole sought damages for the repair and replacement of the concrete, the diminished value of the property, attorney fees, costs, expenses, and anguish and distress. *Id.* at 10, 12.

Swaminathan and Tankala sought coverage and a defense from Allstate. Compl. ¶ 15. Allstate refused. *Id.* ¶ 16.

4

B.     **Procedural History**

On October 13, 2016, Allstate Insurance Company ("Allstate" or "Plaintiff") filed a Complaint seeking a declaratory judgment that Allstate has no obligation to defend or indemnify Swaminathan and Tankala in the underlying state court lawsuit brought by Cole. Compl. ¶ 16.

Allstate now moves for summary judgment, arguing that, as a matter of law, the state court lawsuit does not raise issues covered by the policies Allstate issued to Swaminathan and Tankala, and Allstate therefore has no duty to defend or indemnify Swaminathan and Tankala in the underlying action. Mot. Summ. J. 4-5.

Swaminathan and Tankala object, arguing that there is a dispute of material fact over whether the insurance policies at issue covered the claims raised in the underlying complaint. *See generally* Opp. to Mot. Summ. J., ECF 30. Specifically, Swaminathan and Tankala argue that the underlying suit brings personal injury claims covered by both the homeowner's policy and the personal umbrella policy, and that the insurance policies' exclusions do not apply to the underlying case. Memo. Opp. to Mot. Summ. J. 2-5, ECF 30-1.

## II.     STANDARDS OF REVIEW

In reviewing this motion, the Court must decide two distinct, but related legal issues. First, because this case is brought as a declaratory judgment action, this Court must determine whether it "has jurisdiction to render declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 443 (D. Conn. 2010). The Declaratory Judgment Act, 28 U.S.C. § 2201, empowers this Court to render a declaratory judgment on a case that is "sufficiently real and immediate, allowing specific and conclusive relief . . . and [ ] ripe for adjudication." *Pub. Serv. Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952).

Second, if the Court has jurisdiction to hear this declaratory judgment action, it must determine whether summary judgment should be granted. The Court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

The Court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). The Court will not credit conclusory allegations or denials. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if the Court finds that no reasonable trier of fact could find in the non-movant's favor and the moving party is entitled to judgment as a matter of law, the Court will grant the summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III. DISCUSSION

Allstate argues that it is both proper for this Court to address the merits of its declaratory judgment action and, by addressing the merits, to grant summary judgment in Allstate's favor. As a matter of law, Allstate claims to owe no duty to defend or indemnify Swaminathan and

6

Tankala in the underlying state court action, based on either the homeowner's insurance policy or the personal umbrella policy. The Court agrees.

First, the issue here, whether Allstate must defend Swaminathan and Tankala, is ripe, real, and immediate. Cole has filed a complaint in state court, and Swaminathan and Tankala need to determine whether Allstate will represent them. *See Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn. 2010) ("Declaratory judgment would thus provide the parties with specific, conclusive relief in resolving whether Middlesex has a duty to defend."). Moreover, "[a] court may properly address the merits of a declaratory judgment action through a motion for summary judgment." *Id.* Indeed, "summary judgment is appropriate to determine whether an insurer owes a duty to defend on the basis of an insurance contract because construction of the contract presents a question of law for the court." *Id.*; *see also Misiti, LLC v. Travelers Property Cas. Co. of America*, 61 A.3d 485, 490 (Conn. 2013) ("[W]ith respect to an insurer's duty to defend a claim brought against the insured, '[t]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy.'" (second and third alterations in original) (quoting *Wentland v. American Equity Ins. Co.*, 840 A.2d 1158, 1162 n.7 (Conn. 2004))).

Second, on the issue of whether Allstate must defend or indemnify Swaminathan and Tankala in the underlying state court action, the Court will "compar[e] the allegations of [the] complaint with the terms of the insurance policy." *Id.*; *QSP, Inc. v. Aetna Cas. and Sur. Co.*, 773 A.2d 906, 915 (Conn. 2001) (duty to defend arises when an injured party brings a claim against the insured, within the policy coverage); *Stamford Wallpaper Co., Inc. v. TIG Ins.*, 138 F.3d 75, 79 (2d Cir. 1998). Contract provisions must be construed to animate the "intent of the parties as

7

expressed by the language of the policy . . . viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 876 A.2d 1139, 1144 (Conn. 2005) (quoting *QSP, Inc.*, 773 A.2d at 913-14). The Court reads the language of a contract giving the words their "natural and ordinary meaning." *Taylor v. Mucci*, 952 A.2d 776, 780 (Conn. 2008) (internal citations omitted).

An insurer's duty to indemnify an insured is narrower than its duty to defend. *DaCruz v. State Farm Fire and Cas. Co.*, 846 A.2d 849, 857 (Conn. 2004). The duty to indemnify depends on the facts established at trial and the judgment entered in the case. *Id.* Therefore, if the Court determines that an insurer has no duty to defend an insured, the insurer also has no duty to indemnify the insured. *Mara*, 699 F. Supp. 2d at 460.

A. **The Homeowner's Insurance Policy**

The homeowner's policy at issue states that Allstate will provide coverage for claims "because of bodily injury or property damage arising from an occurrence to which this policy applies." Homeowner's Insurance Policy at 42. Bodily injury is defined as "physical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include [certain diseases]." *Id.* at 24. Property damage is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." *Id.* at 25. An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." *Id.* at 24.

In *New London County Mutual Insurance Company v. Sielski*, the Appellate Court of Connecticut considered a case similar to this one. 123 A.2d 925 (Conn. App. Ct. 2015). There, an insurance company sought a declaratory judgment that it had no duty to defend Andrew

8

Sielski, who sold a house to a couple that later sued him for failure to disclose water damage and drainage problems on the property. *Id.* at 927-28. The Appellate Court noted that no Connecticut appeals court had yet addressed "whether damages arising from a negligent misrepresentation may be considered property damage or under what circumstances a negligent misrepresentation can give rise to an occurrence within the meaning of a homeowners insurance policy." *Id.* at 930. The court therefore surveyed cases from the Connecticut Superior Court and concluded that those cases "uniformly held that damages flowing from misrepresentations are not property damage as that term is normally used in homeowners insurance policies." *Id.* (citing *Amica Mutual Ins. Co. v. Paradis*, CV-13-6041224-S, 2014 WL 6804534 (Oct. 16, 2014); *Amica Mut. Ins. Co. v. Basu*, CV-12-6034435-S, 2013 WL 7020543 (Dec. 20, 2013); *Electric Ins. Co. v. Santo*, CV-06-4011494-S, 2007 WL 2428810 (Aug. 6, 2007); *Homestead Country Properties, LLC v. American Modern Home Ins. Co.*, No. 3:12-cv-1003 (JBA), 2013 WL 3716383 (D. Conn. July 12, 2013)).

Cole's lawsuit hinges not on the deteriorating concrete itself, but rather on Swaminathan and Tankala's intentional or negligent misrepresentations about the condition of the concrete. *See Homestead Country Properties, LLC*, 2013 WL 3716383, at *4 (finding that underlying complaint did not allege "'property damage' within the meaning of the policy because the damages flowing from that occurrence, i.e., [the seller's] negligent misrepresentation that the septic system functioned properly, were economic damages arising from [the buyer's] detrimental reliance on the misrepresentation"). In Count One of the underlying complaint, Cole alleges breach of contract, arguing that Swaminathan and Tankala stated in a "Residential Property Condition Disclosure Report" that "there were no issues with the foundation for the property" and that although some cracks had been sealed and some water proofing had been

9

done, those were preventative measures, and there were "no water issues." Compl., Ex. A at 4. Cole alleges that it "was common knowledge to the residents of Andreis Trail," including Swaminathan and Tankala, that concrete was deteriorating, and alleges that Swaminathan and Tankala used "a sealer to disguise the aforementioned condition of the concrete in order to conceal a material issue with the property. . . ." *Id.* at 5. Cole claims that Swaminathan and Tankala knew or should have known of the condition of the concrete, that they concealed it, and that they caused Cole "damages including, but not limited to, an expensive repair to replace the affected concrete, attorneys fees, costs, expenses, diminished value of property, distress and anguish." *Id.* at 6.

Relatedly, Count Two alleges a breach of the covenant of good faith and fair dealing based on the same alleged facts, and claims that Swaminathan and Tankala "were acting in bad faith" and "with malicious intent to conceal the condition of the concrete in order to rid themselves of a compromised dwelling." *Id.* at 7. Count Three alleges fraudulent misrepresentation, claiming that Swaminathan and Tankala misrepresented the condition of the concrete in the Residential Property Condition Disclosure Report in order "to induce [Cole] to purchase the property." *Id.* at 8.

Count Four alleges negligent misrepresentation, asserting that Swaminathan and Tankala "failed to exercise reasonable care in obtaining or communicating information regarding the condition of the concrete to [Cole]," and provided information in the Residential Property Condition Disclosure Report "to induce [Cole] to act upon it and purchase the property." *Id.* at 9.

Comparing the allegations in the underlying complaint to the terms of the homeowner's insurance policy reveals that none of Cole's allegations assert property damage or bodily injury covered by Swaminathan and Tankala's homeowner's insurance policy. *See Wentland*, 840 A.2d

at 1162 n.7 ("The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy."); s*ee, e.g.*, Compl. Ex. A at 4 (alleging that Swaminathan and Tankala failed to report issues with the foundation); *id.* at 5 (alleging that Swaminathan and Tankala "utilized a sealer to disguise the aforementioned condition of the concrete in order to conceal a material issue with the property"); *id.* at 7 (alleging that Swaminthan and Tankala acted in bad faith and with malicious intent); *id.* at 9 (alleging that Swaminathan and Tankala "failed to exercise reasonable care in obtaining or communicating information regarding the condition of the concrete"). Cole seeks damages related to Swaminathan and Tankala's fraudulent or negligent misrepresentation of the condition of the concrete supporting the house— her injury stems from their alleged deception, not from the property damages that preceded the misrepresentations.

Connecticut courts have distinguished between claims based on property damage and those based on misrepresentations of the condition of property. *See, e.g.*, *Sielski*, 123 A.2d at 931 (citing *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 706 (8th Cir. 2002) ("The structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the [defendants] incurred liability.")); *see also Electric Ins. Co. v. Santo*, 2007 WL 2428810, at *5 ("While the [sellers'] alleged misrepresentations regarding the condition of the property may have caused the [buyers] to incur economic losses, the misrepresentations did not damage the property or cause them loss of the use thereof."); *Amica Mut. Ins. Co. v. Basu*, 2013 WL 7020543, at *4 ("The damages sought by the [buyers] flow from the [sellers'] negligent misrepresentations, fraud and/or breach of contract, and these damages have no basis as property damage . . . Moreover, the [sellers']

11

negligent misrepresentations, fraud and/or breach of contract did not cause the cracks to the basement walls."). Those cases instruct that when the Court considers whether an insurer has a duty to defend an insured, the Court must consider whether the damages alleged in the underlying complaint relate to the property damage itself or, rather, to a seller's representations about the condition of the property. *See Basu*, 2013 WL 7020543, at *4 ("Although [the cracking concrete] constitutes tangible property damage, the cracks predate the occurrence of the defendants' concealment, misrepresentations, fraud and/or breach of contract, for which the [buyers] are seeking to hold the [sellers] liable.").

Here, Cole seeks damages based Swaminathan and Tankala's intentional or negligent misrepresentations about the condition of the concrete in the house's basement. Although those claims are related to the property damage itself, the cracking concrete predated Swaminathan and Tankala's concealment of it, and their concealment is not a covered event under their homeowner's insurance policy. Allstate therefore has no duty to defend Swaminathan and Tankala based on those misrepresentations. Further, because Allstate has no duty to defend Swaminathan and Tankala based on the homeowner's insurance policy, it also has no duty to indemnify them based on that policy. *DaCruz*, 846 A.2d at 857 ("[T]he duty to defend is considerably broader than the duty to indemnify.").

> **B.    The Personal Umbrella Policy**

Swaminathan and Tankala also seek coverage under their personal umbrella policy, arguing that Cole's claim for misrepresentation is one of the personal injury claims that the personal umbrella policy covers, and that Cole "has asserted a claim for bodily injury in the form of 'distress and anguish.'" Opp. to Mot. Summ. J. at 3. Under the personal umbrella policy, "Allstate will pay when an insured becomes legally obligated to pay for personal injury or

property damage caused by an occurrence." Personal Umbrella Policy at 20. An occurrence "means an accident or a continuous exposure to conditions," arising out of "personal activities of the insured." *Id.* at 19, 21-22.

For the reasons articulated above, the Court finds that Swaminathan and Tankala do not have a claim for coverage based on property damage. *See Electric Ins. Co. v. Santo*, 2007 WL2428810, at *4 (Conn. Super. Ct. 2007) ("[M]any courts have concluded that such [misrepresentation] claims do not constitute property damage as the term is used in this and similarly worded policies . . . 'negligent misrepresentations [do] not cause a property damage to the house . . . .'" (quoting *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 706 (8th Cir. 2002)); *Amica Mut. Ins. Co. v. Paradis*, 2014 WL 6804534, at *3 ("[S]everal trial court decisions have addressed this issue and have concluded, based on similar facts and policy language, that a misrepresentation as to the condition of a property prior to its sale cannot constitute 'property damage' because the defect in the property existed before the representation was made."). The issue here is whether Tankala and Swaminathan's misrepresentation to Cole constitutes a personal injury covered by the personal umbrella policy.

A personal injury under the personal umbrella policy "means: a) bodily injury . . . d) libel; slander; misrepresentation; humiliation; defamation of character; invasion of rights of privacy. . . ." *Id.* at 19. It does not cover intentional acts or damage that the insured could have reasonably expected to result from an insured's intentional conduct. *Id.* at 22.

As an initial matter, Allstate has no duty to defend or indemnify Swaminathan and Tankala based on Counts One, Two, or Three of Cole's underlying Complaint, because those claims allege intentional acts. Compl. Ex. A (alleging breach of contract (Count One), breach of

13

the covenant of good faith and fair dealing (Count Two), and fraudulent misrepresentation (Count Three).

In Count Four, Cole alleges that Swaminathan and Tankala negligently misrepresented the condition of the concrete to her, by failing to "exercise reasonable care in obtaining or communicating information regarding the condition of the concrete to the Plaintiff." Compl. Ex. A ¶ 24. Allstate argues that the personal umbrella policy does not entitle Swaminathan and Tankala to a defense of Count Four because the policy provides coverage only for damages stemming from an occurrence, which, under the policy, must be "an accident or a continuous exposure to conditions." Mot. Summ. J. at 6; Compl. Ex. C at 19. There is no dispute here that Cole's damages do not stem from "continuous exposure to conditions," but rather from Swaminathan and Tankala's alleged misrepresentation. Allstate argues that Swaminathan and Tankala's misrepresentation to Cole was not an accident. The Court agrees.

In Connecticut, accident means "an 'unintended,' 'unexpected,' or 'unforeseen, unplanned' event or condition." *Mara*, 699 F. Supp. 2d 439, 447 (D. Conn. 2010) (citing *Hammer v. Lumberman's Mut. Cas. Co.*, 573 A.2d 699, 709 (Conn. 1990) ("An accident is an unintended occurrence." (internal citations omitted)); *Commercial Contractors Corp. v. Am. Ins. Co.*, 202 A.2d 498, 504 (Conn. 1964)) ("The term 'accident is to be construed in its ordinary meaning of an 'unexpected happening'." (quoting *Higgins v. Connecticut Light & Power Co.*, 30 A.2d 388, 391 (Conn. 1943)).

An accident, Allstate argues, "in this context means 'an unintended and unforeseen injurious occurrence . . . an occurrence for which no one is responsible . . . and an event of unfortunate character that takes place without one's foresight or expectation.'" *Id.* at 15 (quoting *Allstate Ins. Co. v. Korytkowski*, 2006 WL 1461121, at *11 (Conn. Super. Ct. May 9, 2006)

14

(internal citation omitted)). Thus, it is clear that intentional acts resulting in bodily injury or property damage are excluded from "accident." *Mara*, 699 F. Supp. 2d 439, 448 (finding that "racially-motivated acts of intimidation and harassment" are not accidents). Also, "even when an action is pled as an unintentional tort (e.g., negligence), the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted." *Id.* at 450 (citing *State Farm Fire & Cas. Co. v. Bullock*, 1997 WL 309584, at *5 (Conn. Super. Ct. 1997) (finding that where the underlying complaint alleged that the defendant struck the underlying plaintiff multiple times on the face and body with the defendant's hands and fists, harm to the underlying plaintiff was intended); *United Services Auto. Ass'n v. Marburg*, 698 A.2d 914, 920 (Conn. App. 1997) (finding that when defendant knew victim was a minor and engaged in sexual misconduct with the victim, intent to harm victim could be presumed as a matter of law)).

In *Homestead Country Properties, LLC*, the District of Connecticut considered whether an insurer breached its duty to defend a man who had allegedly negligently misrepresented the condition of a home by failing to disclose a mold problem when he sold the property to new owners. 2013 WL 3716383, at *1. The court found a "mismatch between the damage and the occurrence . . . because [the underlying plaintiff's] damages were caused by her detrimental reliance on Plaintiff's representation, but Plaintiff's failure to disclose the condition of the property did not cause the underlying conditions of which [the underlying plaintiff] complained." *Id.* at *3. The court also noted that at one point, the septic tank in the house allegedly failed, "which failure could constitute an occurrence." *Id.* at *5. The failure, however, caused property damage lacking "any nexus to [the] negligent misrepresentation." *Id.* at *4.

15

The Connecticut Superior Court in *Thompkins v. New London County*, No. CV 9762684S, 2000 WL 233312 (Conn. Super. Ct. Feb. 15, 2000), also considered a similar situation. There, a homeowner sold a property without disclosing an underlying termite problem. *Id.* at *1. The court found that the seller's negligent misrepresentation of the termite problem did not constitute an accident. *Id.* at *3. The court stated: "[w]hether the term 'accident is to be construed as either the underlying cause, wood devouring insects, or the underlying result, structural damage, it is clear that under either interpretation, the occurrence which caused the property damage, *was not caused by the fact of non-disclosure*" and therefore "[t]he allegations of the underlying complaint do not allege an occurrence for which there is even the possibility of coverage." *Id.* at *2; *accord Cincinnato Ins. Co. v. Anders*, 99 Ohio St. 3d 156, 160 (Ohio 2003) (finding no duty to defend where "[t]he actual accident was the faulty installation of the insulation, leading to the structural deterioration of the house" but the claims were for "the nondisclosure of the damage, not the damage itself").

Here, Cole seeks damages for "an expensive repair to replace the affected concrete, attorneys fees, costs, expenses, diminished value of property, distress and anguish." Compl. Ex. A at 11. Those damages are not the result of an accidental misrepresentation, but rather the result of an accident when the concrete was poured—that the concrete was flawed and would eventually deteriorate. In any event, the deteriorating concrete, which is the injury for which Cole seeks damages, "was not caused by the fact of non-disclosure." *Thompkins*, No. CV 9762684S, 2000 WL 233312, at *2; *see also Homestead*, 2013 WL 3716383, at *3 (finding no occurrence where damages stemmed from detrimental reliance on misrepresentations, not the underlying condition itself).

Therefore, because Cole's complaint does not allege an occurrence that would fall under the personal umbrella policy's definition, Allstate has no duty to defend Swaminathan and Tankala against Cole under Count Four. Allstate also therefore has no duty to indemnify them, because the duty to defend is broader than the duty to indemnify.

**IV.     CONCLUSION**

For all of the foregoing reasons, Allstate's motion for summary judgment is **GRANTED**. Allstate has no duty to defend or to indemnify Swaminathan or Tankala in the underlying lawsuit against Cole.

The Clerk of the Court is ordered to enter judgment for Allstate and close this case.

SO ORDERED at Bridgeport, Connecticut, this 27th day of December, 2017.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge